IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMBERLI SINANI,
    *Petitioner*,

v.

UNITED STATES OF AMERICA,
    *Respondent*.

Crim. No. ELH-16-00119
Related Civil No. ELH-18-2124

**MEMORANDUM OPINION**

This Memorandum Opinion resolves the Motion to Vacate, Set Aside, or Correct Sentence, filed under 28 U.S.C. § 2255 by Amberli Sinani, the self-represented Petitioner. ECF 397 (the "Petition"). Sinani's "Affirmation" is appended to the Petition. ECF 397-1.[1] The government filed a response in opposition. ECF 399. Sinani replied. ECF 409.

In addition, Sinani has filed a "Motion For A Nunc Pro Tunc 'Minus-2' Point Reduction Of Sentence." ECF 395 (the "Motion"). The Motion is filed pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 of the United States Sentencing Guidelines ("U.S.S.G."). The government opposes the Motion. ECF 401. Sinani has not directly replied. But, he has filed a "demand" to be released from captivity. ECF 413. And, on May 28, 2017, he filed a submission challenging this Court's jurisdiction in regard to the underlying case. ECF 417.

No hearing is necessary to resolve the pending matters. For the reasons that follow, I shall deny both the Petition and the Motion.

---

[1] ECF 397-1, Sinani's "Affirmation," is 22 pages in length, and appears to have been submitted without page three. *Id.* The page numbers at the bottom go directly from 2 to 4, without page 3. Therefore, the Court wrote to Sinani on May 9, 2019 (ECF 416), asking him to submit page three. However, the missing page was not provided. But, Sinani did submit an additional filing that was docketed on May 28, 2019. *See* ECF 417.

## I. Procedural Background

In a multi-count, multi-defendant Indictment, filed on April 12, 2016, Sinani was charged in Count One with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. *See* ECF 76. Of the eleven defendants named in the Indictment, Sinani was the only defendant who proceeded to trial.

The trial began on January 23, 2017. ECF 251. Several codefendants testified for the government at the trial, and implicated the defendant in the conspiracy. Text messages and recorded, wiretapped telephone conversations were also introduced.[2] In addition, Sinani testified in his own behalf. On February 2, 2017, after deliberating for about ten to fifteen minutes, the jury returned a verdict of guilty. *See* ECF 265 (Verdict); ECF 377 (Sentencing transcript) at 8.

Sentencing was held on April 13, 2017. ECF 335. Notably, the offense carried a congressionally mandated minimum term of imprisonment of 120 months and a maximum term of life imprisonment. 21 U.S.C. § 841(a)(1), (b)(1)(A). Sinani's advisory sentencing guideline range called for a period of incarceration of 121 to 151 months. *See* ECF 343 (Statement of Reasons) at 1. The government recommended a prison sentence of 144 months (12 years). ECF 377 at 19. But, the Court imposed a sentence of 125 months' incarceration. ECF 342.

Petitioner timely filed a Notice of Appeal. ECF 339. On February 7, 2018, the United States Court of Appeals for the Fourth Circuit affirmed the conviction and the sentence in an unpublished, per curiam opinion. ECF 392; *see United States v. Sinani*, 710 Fed. App'x 601 (per

---

[2] At trial, defendant was assisted by an Albanian interpreter. However, the recorded statements of the defendant demonstrated that he understood and spoke English.

curiam).  The Mandate issued on March 1, 2018.  ECF 393.  Sinani's Petition followed on July 11, 2018.  ECF 397.

## II. Contentions

Sinani alleges numerous grounds for relief, most of which involve claims of ineffective assistance of counsel:  (1) This Court lacks subject matter jurisdiction; (2) Petitioner was engaged in multiple conspiracies and/or a mere buyer-seller relationship; (3) Petitioner was entitled to the benefit of the "Safety Valve" and therefore should have been allowed to plead guilty to a lesser penalty; (4) defense counsel failed to retain an interpreter to provide assistance prior to trial; (5) Petitioner's attorney was ineffective for failing to advise Petitioner of his immigration/deportation status and the unlikelihood of his success at trial, thereby depriving Petitioner of the opportunity to plead guilty; (6) the Court erred in failing to define reasonable doubt in its jury instructions; (7) Petitioner was denied a fair trial because of a juror's inattentiveness/sleeping during the trial.

To elaborate, Sinani complains that his attorney failed to challenge this Court's lack of subject matter jurisdiction over the case, ECF 397-1 at 2-7, and the corresponding "Prosecutorial Misconduct Via Vindictive And Selective Prosecution." *Id.* at 3.  Further, he contends that a multiple conspiracy defense "would have made a difference if objected to and presented." *Id.* at 7.  In his Petition, Sinani also asserts that he was "unable to benefit from the result of the parties [sic] plea bargaining discussions and proffer sessions, due to counsels' inadequate plea bargaining negotiation tactics and poor advice." *Id.* at 9.  And, Sinani complains that defense counsel failed to obtain an interpreter during pretrial preparation to explain to Sinani the "full ramifications" of his "options with regards to pleading guilty or going to trial . . . ." *Id.* at 12.  In addition, Petitioner contends that he was "not properly advised of [his] immigration-deportation status, as a result of a guilty plea or possible trial conviction." *Id.* at 13.

Moreover, Sinani complains that the Court failed "to directly explain the 'beyond reasonable doubt' element in its instructions to the jury," which denied him "the right to a fair trial." *Id.* at 15. And, Sinani alleges that the Court erroneously failed to remove juror number seven from the trial, thereby depriving defendant of a fair trial.

### III. Legal Standards

### A.

Section 2255(a) of Title 28 of the United States Code, under which Sinani filed his Petition, provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.

Pursuant to 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

4

In reviewing the Petition and the Motion, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). Nevertheless, in my view, no hearing is necessary to resolve any claim in the Petition or in the Motion.

**B.**

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477

5

(2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter,* 562 U.S. at 105, and "the

6

standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

7

## C.

"[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In other words, the movant must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Moreover, the scope of collateral attack under § 2255 is far narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)). *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391 (4th Cir. 2009).

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*,

523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded the efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effect assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Put another way, prejudice does not support relief of a procedural default in the absence of a showing of cause. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

## IV. The Contentions

### A.

Sinani complains that his lawyers, both at trial and on appeal, failed to contest subject matter jurisdiction. He also complains of selective prosecution, because "three additional co-defendants," whose "roles were more culpable" than that of Sinani, were not federally prosecuted. ECF 397-1 at 6. According to Sinani, because wiretaps and search warrants were obtained from the Circuit Court for Baltimore City, that court was the proper forum. This claim is frivolous.

Petitioner was indicted under 21 U.S.C. § 846, which charged a drug conspiracy. As the government points out, Sinani was prosecuted for a federal offense. Overlapping federal and state

9

jurisdiction is not uncommon. It is up to the charging authorities to determine where an offense will be prosecuted when, as here, there is overlapping jurisdiction. *See United States v. Claridy*, 601 F.3d 276, 282 (4th Cir. 2010); *cf Gamble v. United States*, ___ U.S. ___, 2019 WL 2493923 (June 17, 2019) (recognizing that, under the dual sovereignty doctrine, the Double Jeopardy Clause of the Fifth Amendment permits successive prosecutions for the same conduct by both state and federal governments, as they are separate sovereigns).

**B.**

Sinani complains that the evidence at trial showed an "isolated buyer-and-seller relationship," and not a "single-continuous drug conspiracy . . . ." ECF 397-1 at 7. Alternatively, he claims that the evidence was consistent with multiple conspiracies. Therefore, Sinani contends that his attorney was ineffective for failing to present either "a multiple-conspiracy or buyer-and-seller relationship defenses . . . ." *Id.* at 8.

As the government observes, ECF 399 at 5, the quantities of heroin sought and obtained by Petitioner were consistent with distribution, not personal use. In any event, at trial defendant testified and denied any involvement with drugs. *Id.* at 6. To the contrary, petitioner sought "to portray himself as a legitimate business man." *Id.* Therefore, I agree with the government that defense counsel was not ineffective in failing to seek an instruction based on a buyer-seller relationship.

Furthermore, the evidence supported the finding by the jury of a single conspiracy. *United States v. Roberts*, 262 F.3d 286, 294 (4th Cir. 2000). As the government points out, this was a case of multiple conspirators, but one conspiracy. ECF 399 at 5. Indeed, a single conspiracy can be found in a case with multiple transactions even when a defendant does not know the identity of all the coconspirators. Here, the evidence showed that the coconspirators were "linked" by "their

mutual interest in sustaining the overall enterprise . . . ." *United States v. Bank*, 10 F.3d 1044, 1054 (4th Cir. 1993).

## C.

Sinani complains that his attorney was ineffective for failing to obtain a plea bargain calling for a sentence of three to five years of imprisonment. As the government acknowledges, because Sinani had no prior record, he could have avoided the mandatory minimum sentence of ten years of incarceration if he satisfied the requirements for the "safety valve." *See* 18 U.S.C. § 3553(f). However, in order to qualify for the safety valve, defendant had to submit to a proffer, at which he would have had to be truthful. And, as the government points out, because defendant consistently maintained his innocence, he could not meet this requirement. ECF 399 at 6.

Moreover, the government contends that it never made a plea offer to the defendant. In this regard, at this Court's direction, a magistrate judge conducted a *Lafler* hearing on January 23, 2017. ECF 247. *See Lafler v. Cooper*, 566 U.S. 156 (2012). The transcript of the *Lafler* hearing confirms the government's contention that no plea offer was made. *See* ECF 385. It also establishes that defendant wanted to proceed to trial.

At the *Lafler* hearing, Petitioner was assisted by an Albanian interpreter. *See* EC 247; ECF 385. There is no basis to argue a lack of understanding.

The prosecutor explained that no plea offer was made because he (the prosecutor) had "been advised repeatedly" by defense counsel that the defendant "is only interested in going to trial and he is not interested in attempting to qualify for the safety valve." ECF 385 at 4-5. That assertion was not contradicted or disputed. Defense counsel acknowledged that, initially, there had been plea discussions in the "range" of three to five years. *Id.* at 5. But, he added that Sinani's "position" is that "he didn't do what he was charged with and wanted a trial." *Id.* In addition,

11

defense counsel represented that he reviewed the evidence with the defendant and the defendant's brother, "but they insist that he is innocent of these charges and that he wants to proceed to trial." *Id.* at 7.

United States Magistrate Judge Beth Gesner confirmed with the defendant that he "never asked [his] attorney to pursue a possibility of a plea offer from the Government . . . ." *Id.* at 8. In response to the court's question, the defendant expressly indicated his desire to go to trial. *Id.*

Defense counsel also advised Sinani that he most likely would be deported. *Id.* at 8. The defendant indicated that he understood and still wished to proceed to trial. *Id.* at 9.

"The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla*, 559 U.S. at 373; *see also Frye* 566 U.S. at 143-44; *Hill*, 474 U.S. at 57. Nevertheless, a defendant has "no right to be offered a plea . . ." *Frye*, 566 U.S. at 148. Rather, if one is offered, the defendant "has the right to 'effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168.

In *Frye*, 566 U.S. at 143, the Supreme Court underscored the "reality" that "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process. . . ." Similarly, in *Lafler*, 566 U.S. at 170, the Court observed that our criminal justice system "is for the most part a system of pleas, not a system of trials." Thus, the *Frye* Court expressly stated that "criminal defendants require effective counsel during plea negotiations. 'Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him.'" 566 U.S. at 144 (citation and some internal quotations omitted).

Clearly, "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement." *Libretti v. United States*, 516 U.S. 29, 50 (1995). And,

"prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction or more serious charges or the imposition of a more severe sentence." *Lafler*, 566 U.S. at 168.

Notably, the two-part test set forth in *Strickland*, 466 U.S. 668, applies to plea bargaining. A petitioner can make a claim for ineffective assistance of counsel if he can "show that there is a reasonable probability" that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Specifically, "a defendant must show that but for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court … , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." *Id*.

The *Frye* Court recognized the role of "personal style" with respect to plea negotiation tactics. 566 U.S. at 145. Thus, it observed that "it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Id.* However, the Court's holding was clear: a defense lawyer "has the duty to communicate formal offers from the prosecution . . . ." *Id.* at 145. In that case, defense counsel rendered ineffective assistance by failing to allow the defendant to consider the plea offer before it expired. *Id.*

*Lafler*, 566 U.S. at 163, also provides guidance. There, the petitioner claimed that ineffective assistance of counsel led him to reject a plea offer. Although the attorney disclosed the plea offer to the defendant, defense counsel's advice to reject it fell below the standard for competent assistance of counsel. *Id.* at 160. In that circumstance, said the Court, "a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* Put another way, "a defendant must show that but for the ineffective advice of counsel there is a

13

reasonable probability . . . that the defendant would have accepted the plea and . . . that the conviction or sentence, or both, under the offer's terms would have been less severe" than what was imposed. *Id.* at 164.

The *Lafler* Court rejected the contention that a fair trial remedies any such errors, stating: "Far from curing the error, the trial caused the injury from the error." *Id.* at 166. This was because the defendant received a sentence substantially more severe than what he likely would have received had he pleaded guilty. *Id.*

In this case, it is clear that the government did not make a plea offer. Moreover, based on defense counsel's assertion to Judge Gesner, and the response of the defendant himself, it is clear that defendant wanted to proceed to trial. His complaint now is the proverbial example of buyer's remorse. Defendant miscalculated the outcome of the trial, and now casts blame on others for his own decision.

**D.**

Sinani complains that his attorney was deficient for failing to obtain an interpreter before trial. ECF 397-1 at 12-13. As a result, he argues that he could not make "an intelligent decision" as to whether to plead guilty or, instead, proceed to trial. *Id.* at 12.

As noted, at the *Lafler* hearing on January 23, 2017, Sinani was provided with an Albanian interpreter. ECF 247; *see also* ECF 385 (transcript). Defense counsel advised the court that the defendant "speaks English" but, "because of the seriousness of the charges, it is best that he have a translator to make sure that he hasn't missed anything." ECF 385 at 3.

At trial, Sinani was again provided with an Albanian translator. *See* ECF 370 at 3. Defense counse indicated that he "thought [the defendant] understood [English] better than he [actually]

14

did . . . . He does understand English, but I think many words he doesn't understand." And, "out of an abundance of caution," the interpreter was requested. *Id.*

The defendant testified at trial. *See* ECF 374. Although he utilized the interpreter, he sometimes answered directly in English, without the use of the interpreter. *See*, *e.g.*, ECF 374 at 104; 106; 107; 108; 112; 123; 124; 128.

Moreover, defendant's conversations and text messages were captured by electronic interception. His communications were in English. It is clear that Sinani was able to speak and understand English.

In addition, the defendant's brother attended a "reverse proffer" with the defendant, and the brother spoke English. As the government notes, this occurred at the request of defense counsel, and was "something quite frankly unheard of." ECF 399 at 7. Moreover, the government permitted the defendant's brother to attend all trial proceedings, even though he was a defense witness and a sequestration order was in effect.

No complaint was ever lodged by defendant as to his lack of ability to comprehend English. I agree with the government that this contention "rings hollow." ECF 399 at 7.

**E.**

Petitioner contends that his attorney told him he could "'win' the case at trial" because it was "a mere simple drug conspiracy case." ECF 397-1 at 13. He claims that his lawyer's "confidence in 'winning' the case" led defendant to proceed to trial, and "tainted" his "decision-making process." *Id.* at 13-14.

Moreover, defendant complains that he was improperly advised of the prospect of deportation. *Id.* at 14. He contends that he is not deportable, because his country of Yugoslavia no longer exists. *Id.*[3]

As noted, the government never made a plea offer. Nor did Petitioner express an interest in satisfying the conditions of the safety valve. Hindsight is always 20-20. But, it does not establish a claim of ineffective assistance.

**F.**

Defendant complains that the trial court deprived him of a fair trial by failing to explain or define the concept of "beyond reasonable doubt." ECF 397-1 at 15.

Mr. Kramer did object to the failure of the Court to include this instruction. ECF 376 at 6. However, it does not appear that this issue was raised on appeal.

Even if preserved, the issue is without merit. Neither the Supreme Court nor the Fourth Circuit requires such an instruction. *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994); *United States v. Reives*, 15 F.3d 42, 45 (4th Cir. 1994); *United States v. Adkins*, 937 F.2d 947, 950 (4th Cir. 1991).

**G.**

Petitioner contends that he was deprived of a fair trial because Juror No. 7 was sleeping during the trial, including during closing arguments and the court's jury instructions. ECF 397-1 at 17-18. As the transcript reflects, the Court raised the matter of Juror No. 7 with counsel. ECF 376 at 65-71; 139-141. The Court subsequently questioned Juror No. 7. *Id.* at 141-2. The juror responded that he was able to serve. *Id.* at 142.

---

[3] The Court expresses no opinion as to the merits of deportation.

Defense counsel advised the Court that he was "satisfied to leave" Juror No. 7 on the jury, *id.* at 143, and the prosecutor agreed. *Id.* Therefore, he was not replaced by an alternate, although an alternate was available.

During jury selection, a district judge has discretion to decide whether to excuse a juror for cause. *United States v. Turner*, 389 F.3d 111, 115 (4th Cir. 2004). The same standard would seem to apply during the trial. In selecting a jury, a court generally may rely on assurances of impartiality in deciding whether to strike a juror. *United States v. Jones*, 716 F.3d 851, 857 (4th Cir. 2013).

"A court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to handle a sleeping juror." *United States v. Johnson,* 409 Fed. Appx. 688, 692 (4th Cir.2011) (per curiam) (internal citations omitted) (quoting *United States v. Freitag,* 230 F.3d, 1019, 1023 (7th Cir. 2000). *See also United States v. Robbins,* No. 2:10CR6, 2015 WL 2194908, at *4 (W.D.Va. May 11, 2015) (denying ineffective assistance claim premised on failure of counsel to raise issue of sleeping jurors because the petitioner "ha[d] not shown that, had counsel objected to the sleeping jurors, the outcome of his trial would have been different ... [particularly given that,] even had counsel brought the issue to the court's attention, a court has 'considerable discretion in deciding how to handle a sleeping juror'") (quoting *Johnson,* 409 F. App'x at 692); *Jensen v. United States,* No. 04CV474, 2007 WL 2042247, at *11 (E.D.Wis. July 11, 2007) ("Generally, courts have been reluctant to reverse a conviction or grant a new trial based on allegations of sleeping jurors. Thus, it follows that the fact that a juror is asleep or inattentive during the course of the trial does not require that a court automatically declare a mistrial and it certainly does not lead to an automatic reversal of a defendant's conviction and sentence." (Internal citation omitted)); *Arispe v. United States,* No. Civ. 03–10124–BC, 2005 WL 3132211, at *2

(E.D.Mich. Nov. 21, 2005) ("It is not necessarily an unreasonable strategy for a defense attorney to decline to object to juror inattentiveness, especially when the jurors may have been inattentive to the government's case.").

Petitioner has not offered any evidence that the outcome of his trial would have been different if Juror No. 7 had been replaced. His claim is without merit.

### V. The Motion

Sinani filed a motion for relief under 18 U.S.C. § 3582(c). ECF 395. He seeks a two-level reduction in his offense level, pursuant to Amendment 782, in regard to the sentencing guidelines calculation on April 13, 2017. *Id.* at 1. Therefore, he now urges the Court to reduce his sentence from 125 months to 120 months of incarceration, *i.e.*, the mandatory minimum. *Id.* at 4.

As the government points out, Amendment 782 was in effect at the time of sentencing. ECF 401 at 2. Indeed, it went into effect on November 1, 2014. Therefore, Sinani received the benefit of the revision to the Sentencing Guidelines.

Pursuant to U.S.S.G. § 2D1.1(c)(1), as amended by Amendment 782, the base offense level for offenses involving at least 1 kilogram but less than 3 kilograms of heroin is 30. At sentencing, the Court determined that Petitioner's base offense level under the guidelines was 30, based on his conviction for conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. Therefore, Petitioner received the benefit of the reduced guidelines.

Section 3582(c)(2) permits the Court to modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has *subsequently been lowered* by the Sentencing Commission." That is not the case here. There have been no subsequent Amendments to the Section 2D1.1 drug guidelines following Petitioner's sentencing. Thus, Petitioner is not entitled to relief pursuant to 18 U.S.C. § 3582(c)(2).

18

## VI. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).[4]

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. at 773. Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

As indicated, a COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Petitioner has not made a substantial showing of the denial of his constitutional rights, I decline to issue a COA.

An Order follows.

Date: July 1, 2019                     /s/
                                       Ellen L. Hollander
                                       United States District Judge

---

[4] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.